# CV05-1416 S

## JUDGE STAGG

RECEIVED

AUG 0 9 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

FILED AND RECORDED
BOSSIER PARISH, LA **MAG JUDGE HORNSBY**
**DIV. A. BURCHETT**

'05 JUL 27 PM 2 57

**CHARLES M. SMITH AND BOSSIER** CLERK & RECORDER
**RIVERSIDE, L.L.C.**

CAUSE NO. _117649_ SEC ____

**VS**

**26th JUDICIAL DISTRICT COURT**

**RIVERWALK ENTERTAINMENT,
L.L.C., LOUISIANA RIVERWALK, L.L.C.,
AND THE CITY OF BOSSIER CITY,
LOUISIANA**

**BOSSIER PARISH, LOUISIANA**

## PETITION FOR DECLARATORY AND
## INJUNCTIVE RELIEF AND FOR DAMAGES

The petition of Charles M. Smith ("Smith"), a resident of the full age of majority and a domiciliary of Bossier Parish, Louisiana and Bossier Riverside, L.L.C. ("Bossier Riverside"), a Louisiana limited liability company with its registered office located in Bossier Parish, Louisiana, respectfully represents that:

1.

Made defendants herein are:

A.  **RIVERWALK ENTERTAINMENT, L.L.C.** ("Riverwalk"), a Louisiana limited liability company with its registered office located in Bossier Parish, Louisiana;

B.  **LOUISIANA RIVERWALK, L.L.C.** ("Boardwalk"), a Louisiana limited liability company with its registered office located in Bossier Parish, Louisiana;

C.  **CITY OF BOSSIER CITY, LOUISIANA** ("Bossier City"), a municipal corporation organized and existing under the laws of the State of Louisiana and located geographically both in Caddo and Bossier Parishes, Louisiana; and

2.

On June 1, 2001, defendants Riverwalk and Bossier City executed a Master Development Agreement ("the Master Development Agreement") in which they agreed to work together to acquire and develop property along the Red River in Bossier City, Louisiana for a retail business and entertainment project that has come to be known as the Louisiana Boardwalk (the "Louisiana Boardwalk Project").

FILED

JUL 27 2005

DEPUTY CLERK
26TH JUDICIAL DISTRICT COURT
BOSSIER PARISH, LOUISIANA

PAPERS ISSUED 7-27 2005

_____ DEPUTY CLERK

**EXHIBIT**

1

3.

For years, plaintiff Charles M. Smith ("Smith") and his family lived in and otherwise physically occupied and possessed as owners certain real property and lots adjacent to the river front in Bossier City, Louisiana. Three of the lots are located west of Block 6, West McCormick Annex, which commonly are known as Lots 8, 9 and 10 (the "Three Lots"), and the other lots are Lots 1-5, East McCormick Annex, of Block 17. Smith and Bossier Riverside are the current owners of the Three Lots.

4.

Smith also has owned and operated a music recording studio on a portion of the property for twenty years and for most of that time had planned to construct and to operate a free-standing live music venue and theater in that same area to be known as the "Violet Rose."

5.

For at least ten years before the Louisiana Boardwalk was legally formed by John Good, Smith had cooperated with his close friend and confidant, Tim Goeders, in conceiving a mixed use entertainment/retail project with live music theater as a central component. On numerous occasions Good had expressed his strong interest in investing in or partnering with Smith in his theater and/or with Goeders in the larger entertainment/retail project. Based on those discussions and Goods representations that he was prepared to provide substantial financial resources for the projects, Good gained the confidence of both Smith and Goeders, who shared their business plans and proprietary information with Good.

6.

Through these discussions, Good learned that Smith also owned (and had or had the ability to obtain the option to purchase) significant acreage of valuable river front property that would be crucial to the development of a river front entertainment/retail project .

7.

In December 2000, Good and Goeders agreed to partner in the development of the Louisiana Boardwalk Project. After numerous discussions with Good and Goeders, in which Good offered Smith attractive and immediate financial and other inducements to convince him to delay his plans

to construct his own free-standing theater and to become part of the Louisiana Boardwalk Project, Smith was persuaded by Good to agree to transfer (and to arrange the transfer, as to other option property) certain acreage to Riverwalk, with the understanding that it immediately would convey the property to Bossier City, as it had done, or intended to do, with all of the other acreage it acquired in the Louisiana Boardwalk Project area.

8.

Accordingly, on November 30, 2001 (and still based on Good's prior inducements), Smith signed a written Agreement (the "Agreement"), whereby Smith agreed to transfer Lots 1, 2, 3 and 5, Block 17, McCormick Annex Subdivision ("Lots 1, 2, 3 and 5") to Riverwalk in exchange for Riverwalk's agreement to set aside a 25,000 square foot tract within the Louisiana Boardwalk Project area for Smith to purchase, at the same favorable price per square foot for which Lots 1, 2, 3 and 5 were to be sold to Riverwalk and then conveyed to Bossier City, in order for Smith to build and operate the Violet Rose theater.

9.

The Agreement expressly provided that the sale of the lots to Riverwalk would include mineral rights and executive rights but specifically would exclude "any accretion or alluvion thereto."

10.

At the time the Agreement was being negotiated, representatives of Riverwalk discussed with Smith whether to include in the Agreement the additional sale by Smith of the Three Lots to Riverwalk. The additional sale of the Three Lots was initially included in early drafts of the Agreement. However, the parties concluded that arrangements for the additional sale and purchase of the Three Lots would be delayed for various reasons and reference to the Three Lots was removed from the Agreement.

11.

Prior to the execution of the Agreement, and throughout the entire time period covered by this lawsuit, representatives of Riverwalk and Boardwalk and representatives, officials and employees of Bossier City, were aware of and, at times, actively participated in discussions with

Smith regarding the Agreement and the contemplated separate sale of the Three Lots.

12.

Pursuant to the Agreement and related inducements, on January 11, 2002, Smith executed a cash sale deed whereby he conveyed to Riverwalk Lots 1, 2, 3 and 5. Despite the intentions of Smith and defendants, as expressly recited in the Agreement, the cash sale deed erroneously included "boilerplate" language purporting to convey the property "together with all of the alluvion, dereliction and batture lying between the above described tracts and the Red River." At the time he signed it, Smith was not aware of the inclusion in the cash sale deed of the erroneous "accretion" language, was not represented by counsel at the closing and did not take with him from the closing any copies of the closing documents. By cash sale deed dated January 16, 2002, Riverwalk sold the Lots 1, 2, 3 and 5 to Bossier City, and the cash sale deed contained the same property description of Lots 1, 2, 3 and 5 as the earlier deed from Smith to Riverwalk, as well as the same erroneous "accretion" language described above. At no time did Smith, Riverwalk or Bossier City intend for the Three Lots to be conveyed as part of the property transferred in either the January 11, 2002 or the January 16, 2002 cash sale deeds nor did they intend that the Three Lots be sold or considered as accretion to Lots 1, 2, 3 and 5.

13.

After the cash sale deed was executed on January 11, 2002, and consistent with the terms and conditions of the Agreement, Smith and representatives of Riverwalk began negotiating the sale to Smith of 25,000 square feet of property within the Louisiana Boardwalk Project for Smith to develop the theater. No such sale has occurred because of Riverwalk's and Boardwalk's stalling tactics and insistence on including unreasonable restrictions on the design and operation of the theater in the proposed sale transaction. Such conduct constitutes a bad-faith breach of the Agreement by Riverwalk and by Boardwalk.

14.

Further, after the cash sale deed conveying Lots 1, 2, 3 and 5 was executed, Smith at his own personal expense undertook to complete the contemplated curative title work necessary on the Three Lots, with the consent, knowledge, support and encouragement of Riverwalk, Boardwalk and Bossier City.

15.

Upon completion of Smith's curative title work, Riverwalk, Boardwalk and Bossier City continued to work with Smith toward an agreement by which Smith would sell (and Bossier City ultimately would become the owner of) the Three Lots.  At some point in 2004, Riverwalk, Boardwalk and Bossier City apparently changed their collective public approach to Smith and how they were to acquire ownership of the Three Lots and began to threaten Smith that Bossier City would begin expropriation proceedings on the Three Lots if Smith did not sell them to defendants.

16.

In November 2003, Boardwalk, which is described as "the development entity created by Riverwalk and its financial/development partner . . . with the knowledge and consent of the City" (rather than Riverwalk, the original party to the Master Development Agreement) and Bossier City executed that certain First Amendment to Master Development Agreement (the "First Amendment") in which they both acknowledged in Paragraph 12 thereof that Smith still owned the Three Lots and that expropriation proceedings might be necessary and, if so, would be pursued.

17.

On or shortly after July 22, 2004, Smith received a letter from an attorney representing Bossier City, in which Bossier City made the unfounded and, in light of the factual circumstances set forth above, astounding assertion that it owned the Three Lots by virtue of its acquisition of Lots 1, 2, 3 and 5 from Riverwalk in January 2001.  This assertion by Bossier City is based on the belated and erroneous fantasy that the parties intended the Three Lots to be conveyed as part of the property transferred in both the January 11, 2002 or the January 16, 2002 cash sale deeds and that they intended that the Three Lots be sold and considered as accretion to Lots 1, 2, 3 and 5.  The July 22, 2005 letter  was Smith's first notice that Bossier City was claiming ownership of the Three Lots.

18.

Bossier City maintains its assertion of ownership of the Three Lots despite having overwhelming knowledge to the contrary, including knowledge of the Agreement, the continuing negotiations for the purchase of the Three Lots by Riverwalk, Boardwalk and Bossier City after consummation of the cash sale deed for Lots 1, 2, 3 and 5 more than two years prior, its preparation for expropriation proceedings against Smith to obtain ownership of the Three Lots and its express

acknowledgment of Smith's ownership of the Three Lots in the First Amendment about eight months prior.

19.

Based on Bossier City's assertion, defendants have partially developed the Three Lots and have constructed a portion of the Louisiana Boardwalk Project thereon, despite Smith's written demand to cease and desist such activity and his persistent written reiterations claiming ownership of the Three Lots.

20.

As a result of the foregoing, plaintiffs are entitled to the following relief:

**COUNT ONE**

Plaintiffs are entitled to a declaratory judgment that the cash sale deed of January 11, 2002 did not dispossess Smith of ownership of the Three Lots.

**COUNT TWO**

Plaintiffs are entitled to a judgment reforming (a) the January 11, 2002 cash sale deed between Smith and Riverwalk to reflect that the Three Lots are not accretion to Lots 1, 2, 3 and 5 and were not conveyed therein; and (b) reforming the January 16, 2002 cash sale deed between Riverwalk and Bossier City to reflect that the Three Lots are not accretion to Lots 1, 2, 3 and 5 and were not conveyed therein.

**COUNT THREE**

In the alternative, if Bossier City is determined to be the owner of the Three Lots under these circumstances, then it will have been enriched without cause at the expense of plaintiffs and Smith will be entitled to judgment equal to the amount by which Bossier City has been enriched.

**COUNT FOUR**

Bossier City's claim of ownership of the Three Lots under these circumstances is the result of a tortious conspiracy among Riverwalk, Boardwalk, Bossier City, unnamed managers, members, officials, employees and representatives of Riverwalk, Boardwalk, Bossier City and others to deprive Smith of his ownership of the Three Lots without compensation. Smith is entitled to all reasonable damages caused by the conspiracy.

## COUNT FIVE

Bossier City's claim of ownership of the Three Lots under these circumstances is the result of a tortious conspiracy among Riverwalk, Boardwalk, Bossier City, unnamed managers, members, officials, employees and representatives of Riverwalk, Boardwalk, Bossier City and others to deprive Smith of his ownership of the Three Lots without compensation and due process of law in violation of 42 U.S.C.A. Sections 1983 and 1985. As a result, Smith is entitled to all reasonable damages and attorneys fees.

## COUNT SIX

Riverwalk, Boardwalk and Bossier City's development and construction on the Three Lots constitute conversion and trespass. Plaintiffs have sustained and will continue to sustain serious and irreparable harm and damage as a result of the conversion and trespass, and Plaintiffs are entitled to a permanent injunction ordering Riverwalk, Boardwalk and Bossier City to remove any developments and construction on the Three Lots and to restore the Three Lots to their original condition.

## COUNT SEVEN

Riverwalk, Boardwalk and Bossier City's development and construction on the Three Lots constitutes conversion and trespass. Plaintiffs are entitled to all reasonable damages caused by the conversion and trespass.

## COUNT EIGHT

Bossier City's claim of ownership of the Three Lots under these circumstances and Riverwalk, Boardwalk and Bossier City's conversion of and trespass upon the Three Lots is the result of an intentional effort on the part of the defendants to prevent Smith from opening the theater and thereby competing with the Louisiana Boardwalk Project and thereby constitutes an unfair trade practice under the Louisiana Unfair Trade Practices Act and entitles Smith to damages, penalties and attorney's fees.

## COUNT NINE

Riverwalk and Bossier City have breached the Agreement to convey property in the Louisiana Boardwalk Project area to Smith in order for him to build and operate the Violet Rose theater. Smith is entitled to specific performance of the Agreement and to have Riverwalk,

Boardwalk and Bossier City convey property in the Louisiana Boardwalk Project area to Smith, in accordance with the terms and conditions of the Agreement, for him to build and operate the Violet Rose theater.

## COUNT TEN

Riverwalk's and Boardwalk's bad faith breach of the Agreement to convey property in the Louisiana Boardwalk Project area to Smith upon which to build and operate the Violet Rose theater entitles Smith to all reasonable damages caused by the breach.

## COUNT ELEVEN

Riverwalk's and Boardwalk's bad faith breach of the Agreement to convey property in the Louisiana Boardwalk Project area to Smith for him to build and operate the Violet Rose theater is the result of a tortious conspiracy to prevent Smith from opening the theater and thereby competing with the Louisiana Boardwalk Project, and Smith is entitled to all reasonable damages caused by the conspiracy.

## COUNT TWELVE

Riverwalk's and Boardwalk's bad faith breach of the Agreement to convey property in the Louisiana Boardwalk Project area to Smith for him to build and operate the Violet Rose theater is the result of a tortious conspiracy to prevent Smith from opening the theater and thereby compete with the Louisiana Boardwalk Project and thereby constitutes an unfair trade practice under the Louisiana Unfair Trade Practices Act and entitles Smith to damages, penalties and attorney's fees.

## COUNT THIRTEEN

Bossier City's claim of ownership of the Three Lots under these circumstances, the tortious conspiracy among defendants, unnamed managers, members, officials, employees and representatives of Riverwalk, Boardwalk, Bossier City and others to deprive Smith of his ownership of the Three Lots without compensation and defendants' conversion of and trespass upon the Three Lots is the result of an intentional effort on the part of the defendants to inflict emotional distress upon Smith and Smith is entitled to judgment against defendants for all damages caused by the tortious conduct.

21.

Plaintiffs request a jury trial on all issues.

WHEREFORE, Plaintiffs, CHARLES M. SMITH and BOSSIER RIVERSIDE, L.L.C., respectfully pray that defendants be served with a copy of this petition and be duly cited to appear herein and answer same, and that after due proceedings there be judgment in favor of plaintiffs and against defendants, as follows:

1. On Count One, declaring that the cash sale deed of January 11, 2002 did not dispossess Smith of ownership of the Three Lots;

2. On Count Two, reforming the January 11, 2002 cash sale deed between Smith and Riverwalk to reflect that the Three Lots are not accretion to Lots 1, 2, 3 and 5 and were not conveyed therein and reforming the January 16, 2002 cash sale deed between Riverwalk and Bossier City to reflect that the Three Lots are not accretion to Lots 1, 2, 3 and 5 and were not conveyed therein.

3. In the alternative, on Count Three, for damages equal to the amount by which Bossier City has been enriched by becoming the owner of the Three Lots without paying for them;

4. On Count Four, for all reasonable damages Smith caused by the defendants' conspiracy to deprive Smith of his ownership of the Three Lots without compensation;

5. On Count Five, for all reasonable damages and attorneys fees for defendants' conspiracy to deprive Smith of his ownership of the Three Lots without compensation and due process of law in violation of 42 U.S.C.A. Sections 1983 and 1985;

6. On Count Six, for a permanent injunction ordering defendants to remove any developments and construction on the Three Lots and to restore the Three Lots to their original condition;

7. On Count Seven, for all reasonable damages caused by defendants' conversion of and trespass upon the Three Lots;

8. On Count Eight, for damages, penalties and attorneys fees under the Louisiana Unfair Trade Practices Act caused by defendants' intentional effort to prevent Smith from opening the theater and thereby competing with the Louisiana Boardwalk Project;

9.  On Count Nine, for specific performance of defendants' obligation to convey property in the Louisiana Boardwalk Project area to Smith, in accordance with the terms and conditions of the Agreement;

10.  On Count Ten, for all reasonable damages caused by defendants' bad faith breach of the Agreement to convey property in the Louisiana Boardwalk Project area to Smith upon which to build and operate the Violet Rose theater;

11.  On Count Eleven, for all reasonable damages caused by defendants' tortious conspiracy to prevent Smith from opening his theater and thereby competing with the Louisiana Boardwalk Project;

12.  On Count Twelve, for damages, penalties and attorneys fees under the Louisiana Unfair Trade Practices Act caused by defendants' intentional effort to prevent Smith from opening the theater and thereby competing with the Louisiana Boardwalk Project;

13.  On Count Thirteen, for all reasonable damages caused by defendants' intentional effort to inflict emotional distress upon Smith; and

14.  For all other general and equitable relief to which plaintiffs are entitled.

Respectfully submitted:

McMICHAEL, MEDLIN, D'ANNA
& WEDGEWORTH, L.L.C.

By: _____
        James C. McMichael LSBA #10443
        W. Deryl Medlin LSBA #09405

Post Office Box 72
504 Texas Street, Suite 400
Shreveport LA 71161-0072
Telephone:    318-221-1004
Fax:          318-221-0008


Randall S. Davidson LSBA #4715
Davidson, Jones & Summers
509 Market Street, Suite, Suite 800
Shreveport, Louisiana 71101
Telephone:    318-424-4342
Fax:          318-226-0168

ATTORNEYS FOR PLAINTIFFS
CHARLES M. SMITH AND BOSSIER
RIVERSIDE, L.L.C.


**PLEASE SERVE:**

**RIVERWALK ENTERTAINMENT, L.L.C.**
through registered agent of service
John Good, Jr.
370 Stonebridge Blvd
Bossier City, Louisiana 71111

**LOUISIANA RIVERWALK, L.L.C.**
through its registered agent of service
Corporation Service Company
320 Somerulos Street
Baton Rouge, Louisiana 70802-6129

**CITY OF BOSSIER CITY, LOUISIANA**
through the Mayor's office
Mayor Lorenz Walker
620 Benton Road
Bossier City, Louisiana 71111

CHARLES M. SMITH AND BOSSIER
RIVERSIDE, L.L.C.

VS

RIVERWALK ENTERTAINMENT,
L.L.C., LOUISIANA RIVERWALK, L.L.C.,
AND THE CITY OF BOSSIER CITY,
LOUISIANA

CAUSE NO. ___1 1 7 6 4 8___

26th  JUDICIAL DISTRICT COURT

BOSSIER PARISH, LOUISIANA

STATE OF LOUISIANA

PARISH OF CADDO

## AFFIDAVIT

BEFORE ME, the undersigned authority, personally came and appeared CHARLES M.
SMITH, who, after being first duly sworn, deposed that he is the plaintiff in the above matter and
that he has read the above and foregoing Petition and that the information contained therein is true
and correct to the best of his knowledge, information and belief.

_Charles M. Smith_
CHARLES M. SMITH

SWORN TO AND SUBSCRIBED BEFORE ME, the Notary Public, on this the 2₁ˢᵗ
day of July, 2005.

___Jill Page Beebe___
Notary Public   No. 1149
Printed Name: _Jill Page Beebe_